Our third case for argument today is United States v. Sutton. Ms. Friedman. Yes. Good morning and may it please the Court. Raffaella Friedman on behalf of Appellant Rhonda Sutton. The Sixth Amendment guarantees not only the right to choice of counsel, but a fair opportunity to secure that counsel. Here, the District Court acted arbitrarily when it denied Ms. Sutton that fair opportunity. It considered her request only under the more stringent, ineffective assistance of counsel and court-appointed counsel framework, and because new counsel, court-appointed or retained, might require continuance, it was not an option under any circumstance. At a minimum, the District Court needed to do what other courts have done under the case law, instruct Ms. Sutton that retained counsel could appear and needed to do so by a certain date, at which point it could argue for a continuance. But the Court denied the motion outright, with no instruction to a vulnerable defendant proceeding effectively pro se. And, moreover, the Court did so entirely due to its own calendar. Even under the Sixth Amendment context, we still review this for abuse of discretion. And given the Court's findings about delay, that this was a delay tactic on your client's behalf, and the scheduling with all of the COVID requirements, how can we find that an abuse of discretion? This Court can find an abuse of discretion where the factual findings lack a foundation. And we're asserting that they did here. Ms. Sutton's request was not untimely, and that was the crux of the Court's finding that her intention was to delay. But under the case law, a request that is four weeks in advance of the trial is not untimely. Neither the government nor Ms. Sutton's counsel were able to find such a case. Turning to the COVID-19 and the Court's calendar... But it was more than just the timing here. The Court based it on the fact it was four-plus years after the arraignment, ten days before the final pretrial conference. But your client hadn't taken any real affirmative steps to find a lawyer of her choosing. So it wasn't like she came in four weeks before trial and said, I want to hire X to represent me. Your Honor, the case law instructs that the motion to withdraw cannot come before the time of the dispute with the attorney. And here the dispute with the attorney came shortly around mid-September, perhaps three days before the motion itself came. My question's a little different. You're asking for the Sixth Amendment right to retain counsel of your choice, that that framework apply. When she came in and asked for the new attorney, she didn't even have a counsel of her choice selected. Your Honor, she... Which was part of the reason for the Court finding it was a delay tactic. Under the case law, other courts gave specific instructions saying you need to actually appear with your retained counsel. She did identify a name, her cousin, Arthur Sutton, who was a seasoned attorney with Chicago-based network and referrals. She identified a name, but she said she really hadn't discussed it much with him. She wasn't sure if that's who she wanted to retain. So the case law you rely on, the Carlson and Sellers cases, the defendant came in with counsel of his choice. And that was a significant factor both for the Sixth Amendment framework to apply and for the Court's analysis. And here your client came in wishy-washy with no particular complaints about her existing client's performance other than she didn't have a good, warm feeling, and no particular lawyer who she wanted to represent her. And those were important factors in the Court's determination of delay. So you're asking us to say that the delay didn't have factual findings. Why aren't those sufficient and take it out of the other case law that you're relying on? A few points to address there, Your Honor. In both Carlson and in Sellers, the retained counsel appeared the morning of trial or the eve of. Here, Ms. Sutton was a few steps behind because she was a month out. And the Court specifically said this is not an option. I'm not considering court-appointed or retained counsel from here on out. If you look at the cases Fox, Sinclair, Lyles, in each of those instances, the Court provided very specific instructions to the defendant. And the Court actually granted at least one continuance in Fox. And in Lyle, the Court granted one continuance and gave three or four additional instructions. So here, Ms. Sutton, yes, she is raising it for the first time. It came at the time of her dispute with her lawyers. And her lawyers, on the record, stated we have not spoken with our client from January of 2022 until September 16th of 2022, which is about an eight-month gap. And at that juncture, when they began to actively prepare for trial, that's when the dispute arose, and that's when Ms. Sutton and her family decided this is untenable, we can't go forward with this counsel, and we need to go in front of the Court. And so those key differences and the distinction between the Court's approaches in those other cases, I think, have significant weight here. And again, I would turn to the Court's emphasis on the delay, the four-year delay. That delay was not of Ms. Sutton's making. This was in the fog of the COVID-19 pandemic, where things were being continued and continued and continued. And part of her reason for wanting new counsel was the fact that they weren't really keeping her informed. She did not know what was going on with her case. And then they swoop in a few weeks before trial and say, we potentially have this plea offer for you. All of the other co-defendants have pled, and she rejected it, and they did not support her decision. And that's a very key strategic difference. I would also add that Ms. Sutton, again, was proceeding somewhat pro se. Her attorneys did not fully join and support her motion. And so her request should be construed liberally. She had to thread a very fine needle by making these arguments before the court with her attorneys, who she may have to continue working with right next to her. And again, she was a first-time criminal defendant. She was not someone who was obstructionist, had a history of game playing, and she was also not temperamentally. I don't understand how this whole line of argument can be reconciled with Morris against Slappy, which says that a defendant with appointed counsel doesn't have any right to a particularly good or warm relation with counsel. You seem to be asking us to contradict the Supreme Court. How do you reconcile your position with Morris? I would direct the court to look at Lewis v. United States. I asked you to discuss Morris. The right answer to that question discusses Morris. Well, Your Honor, Morris v. Slappy, I believe, dealt with court-appointed counsel. Lewis v. United States, another Supreme Court case that's more recent. Your client had court-appointed counsel. The motion asked the district judge to provide another court-appointed counsel. I wish you would address the bearing of Morris against Slappy. Morris v. Slappy does not apply here because what we are addressing is the right to choice of counsel. And an indigent defendant may still request leave of the court for retained counsel. And under that framework— Am I missing something? The motion asked the judge to appoint another lawyer under the Criminal Justice Act to replace one appointed counsel with another appointed counsel. I think as Judge St. Eve has already said, if your client had shown up with a retained counsel, this would have been a different situation. But it wasn't. It was a request to replace one appointed counsel with another. Why isn't this case controlled by Morris v. Slappy? It is not controlled by Morris v. Slappy because although Ms. Sutton's counsel filed the motion to withdraw, she made a motion on the record requesting retained counsel, and the court understood it. I'm frustrated. She did not—her motion did not request replacement by a retained counsel, nor did she retain a counsel and ask for that lawyer to have time to prepare for trial. There was no lawyer named, and even in this court, all you're willing to say is maybe a friend of the family or a relative might have been willing to offer pro bono assistance. But there's no retention agreement. There is no commitment by a retained lawyer to provide assistance. Right? One can't pretend that there was a retained lawyer in the picture. There just wasn't. That's why I'm asking my question. Your Honor, Ms. Sutton requested the opportunity, a fair opportunity, to secure retained counsel. And what we are arguing is that fair opportunity was not given because the court denied the motion outright, saying, and I can quote the court, this is not an option, this is not an option. She is not ready with a different attorney to substitute to represent her. And what that means to Ms. Sutton is that I cannot later bring a retained attorney. Again, if the court contrasts this case and the timing of it with Carlson v. Jess, in that case the retained counsel appeared the morning of trial. Here you have a court denying her the opportunity to appear with retained counsel a month before trial is set. So why are we not then under Sinclair? So the contention this morning is that this was a motion to continue? This was a motion for a fair opportunity to secure counsel. So it was a motion to continue. It was a motion, it was a request for the court to hear retained counsel's argument for a motion to continue. But there is no retained counsel. I'm asking the procedural posture that the court was faced with a few weeks before trial, pre-trial, the motion. So is she requesting a motion to continue the pre-trial, continue the trial, so that I can pursue retained counsel? The court construed it as a motion for continuance. The court stated, so is your request to just continue the trial until you can obtain retained counsel? So that is what the court construed her request as. So, yes, it was a motion to continue. And I would just emphasize again that the court had options. It could have continued the case. It could have instructed her, I'm denying the motion to withdraw. I'm not willing to grant a motion to continue. However, you can appear with retained counsel and argue for that continuance. Why did she need the court to tell her that, though? She had that right. She could have come back and said, I have retained counsel, and here's who I want to represent me. I would, again, point to what other courts have said to a defendant, which is, you have the right to retain counsel at any time. Sure, and the court certainly could have said that. And I believe the court, that was probably clear at the initial appearance or the arraignment, that if it couldn't afford a counsel, they'd appoint one, suggesting she could bring in her own if she wanted. But the court didn't have an obligation to do that, especially when she's still represented by counsel. We're arguing that, in this instance, the court said that appearing with retained counsel was not an option in the record, in that transcript. And for someone who is proceeding without attorneys fully on her side, without them fully advising her, without them fully joining her motion, which is indicative of some conflict, that she needed that instruction from the district court. And we would argue that it's not so burdensome. The court did engage in this colloquy, mainly focusing on the ineffective assistance of counsel standards. It's somewhat difficult to accept the argument this morning that she didn't, for some reason, understand that she could retain counsel when she represented to the court of attorneys that she was considering. So I think it's a little more nuanced than what we're hearing this morning as to what was presented to the court. Let me clarify then, Your Honor. She came before the court saying, I would like to retain counsel. And when she left the hearing that day, based on the record, her understanding was that she could not, because the court said this is not an option, this is not an option. We're proceeding to trial. And, again, I would just urge this court to consider that the court based us on generalized calendaring concerns. I see that I am out of time, unless the court has any further questions. Thank you, Ms. Friedman. Mr. Sanders. May it please the court. Jeremy Sanders on behalf of the United States. This court should affirm Rhonda Sutton's conviction and resulting sentence for conspiracy to commit health care fraud. Now, both throughout her briefing and in her presentation this morning, Ms. Sutton claims the district court abused its discretion when it declined to continue the trial date so that she could retain counsel of choice. But as this panel has noted this morning, that is not the motion that the district court had in front of it. That's docket entry 288. In that filing, Sutton's appointed attorneys filed a motion to withdraw and a motion and requested that the district court, quote, appoint new counsel under the Criminal Justice Act. And it wasn't until the hearing on the motion a few days later that Ms. Sutton made these vague and equivocal comments about possibly wanting to retain a lawyer, a family member. The district court then engaged in an appropriate colloquy with her. And the result of that questioning showed that there was actually no lawyer ready to make an appearance. There was no lawyer lined up. The family member that she talked to, she had not really spoken to much at all about the case. And under those circumstances, it was appropriate for the district court to determine that it would not continue the trial for her to secure counsel of choice and that it was not appropriate for the attorneys who were representing her to withdraw. So given the fact that there was no counsel who had made a notice of appearance or even one who was waiting in the wings, we think the proper test for the motion to be evaluated under the rubric would be for motions to retain, replace appointed counsel. And that the courts looked at three factors. One, the timeliness of the motion. Two, the adequacy of the colloquy that the district court conducted. And three, the cause for the complaint. Now here, the court denied, as to the first factor, claiming that the timing was suspect. This came four years after the case had been indicted. And it was a month before trial and only 10 days before the final pretrial conference. Now, later at the hearing on the motion to deny bail pending appeal, the district court elaborated on its timing concerns, noting that it did not find Ms. Sutton credible in her allegations and, in fact, determined that she was ready to delay the trial. Now my opponent on the other side points to the fact that there's cases where the motion came a lot closer to the eve of trial, but Sinclair teaches us that there's no hard and fast rule as to when it comes to timing. It seems here that when looking at timing, too, we have to keep in mind the procedures that were in place because of the pandemic and the difficulty of scheduling trials then because each trial required four courtrooms. Judges had to work around a schedule. They couldn't just use their own courtroom and say we're going to trial on X. That has to be, and as the district court noted, that has to be a factor here. I think that's exactly right, Judge St. Eve, and I think what we sort of said in our brief is the timing has to be viewed in context and the context was the necessary procedures that were in place. The district court commented that it had to go through a screening protocol in order to determine when they could appoint counsel. So what might be considered untimely in a run-of-the-mill case is not going to be the same when we're talking about the COVID protocols that were in place. The district court also found that there was no genuine conflict in the relationship and that was not a complete breakdown of the attorney-client privilege, and that the case law is replete with cases that talk about how a mere disagreement as to strategy or the fact that someone may not have complete confidence in their attorneys isn't enough under Morris v. Slappy and these other cases that say there needs to be a complete breakdown. Now, a final point is once we're operating under this rubric of motions for replacement of appointed counsel, the defendant cannot prevail unless she shows that she was deprived of effective assistance of counsel and defendant in her reply brief issues any reliance on that and says they're not making those claims on direct appeal, that those are more properly preserved for 2255 collateral attacks. Now, I will note that even if we evaluate the case under the choice of counsel rubric that counsel for the defendant has supplied, I think the district court still did not abuse its discretion there. The test is still an abuse of discretion under that rubric, and the district court appropriately balanced the choice of counsel against judicial efficiency and the right to a public resolution of the trial in a speedy manner. Again, this trial had been pending for four years. We were a month away from trial. There were difficulties in scheduling because of COVID, and the district court was well attuned to all of those necessary factors. And I think the reason we can't evaluate it under the rubric of choice of counsel is because there was no counsel. There had been no one who had made an appearance. There was no one even waiting in the wings. And Sinclair teaches us that that is at best preliminary and highly contingent, and that's the exact situation that the district court found itself facing here. There are no further questions. I'm happy to answer questions on the supervised release condition, but if not, we would rest on the arguments in our brief and ask the court to affirm the district court here. Thank you. Thank you very much. Ms. Friedman, the court appreciates your willingness and that of the Remington Center to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement.